WELLS FARGO | HOME MORTGAGE

Wells Fargo Home Mortgage
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

LOAN MODIFICATION AGREEMENT
LOAN NUMBER:
PROPERTY ADDRESS 1666 Woodlawn Rd
Chatsworth GA 30705-5917

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on February 11, 2013, by and between Sheenequa M Evans (the "Borrower(s)") and Wells Fargo Bank, N. A. (the "Lender", together with the Borrower(s), the "Parties").

WITNESSETH

WHEREAS, Borrower has requested and Lender has agreed, subject to the following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Note and Security Instrument dated 09/25/2001.)

1. BALANCE. As of February 11, 2013, the amount payable under the Note and Security Instrument (the "Unpaid Balance") is U.S. $ 83,769.70.

2. EXTENSION. This Agreement hereby modifies the following terms of the Note and Security Instrument described herein above as follows:

A. The current contractual due date has been extended from 07-01-12 to 04/01/2013. The first modified contractual due date is on 04/01/2013.

B. The maturity date has been extended from 09-41 (month/year) to 03/01/2043.

C. The amount of interest to be included (capitalized) will be U.S. $ 2,984.31.
The amount of the Escrow Advance to be capitalized will be U.S. $1,209.04.
The amount of Recoverable Expenses* to be capitalized will be U.S. $650.00.
The modified Unpaid Principal Balance is U.S. $ 88,613.05.
* Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/ Property Inspections



WELLS FARGO | HOME MORTGAGE

Wells Fargo Home Mortgage
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance of U.S. $ 88,613.05. The Borrower(s) promises to make monthly payments of principal and interest of U.S. $ 385.65, at a yearly rate of 3.250%, not including any escrow deposit, if applicable. If on the maturity date the Borrower(s) still owes an amount under the Note and Security Instrument, as amended by this Agreement, Borrower(s) will pay this amount in full on the maturity date.

E. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

3. NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

4. The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.

5. The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).

6. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

7. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

8. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.



WELLS FARGO HOME MORTGAGE

Wells Fargo Home Mortgage
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

9. This Agreement is conditioned upon the receipt of the 1-4 Family Modification Agreement Rider Assignment of Rents, if included, specified in the attached cover letter, which is incorporated herein by reference.
10. That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N. A. .

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N. A. , as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. AMC _____ (Borrower(s) initial)

11. CONSENT TO DISCLOSE PERSONAL INFORMATION
I consent to the disclosure of my personal information, including the terms of this modification, to any investor, owner, servicer, insurer or guarantor who owns, services, insures or guarantees my first lien account for purposes related to the second mortgage Consumer Relief Program. I also consent to the disclosure of my personal information to any entity that performs support services for the second mortgage Consumer Relief Program, including marketing, survey, research or other borrower outreach, data processing and technical systems consulting.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however, any calls we place to your cellular or mobile phone will incur normal air time charges assessed by your mobile carrier.

Together we'll go far




Wells Fargo Home Mortgage
210 Wildwood Parkway
Birmingham, AL 35209

Tel: 877 913 3376 Toll Free

Dated as of this 27 day of February, 2013.

Sheenequa M Evans
Signature

Signature

Kenya Blackmon 3-13-13
Wells Fargo Bank, N. A.

Name: **Kenya Blackmon**

Its: Vice President Loan Documentation



# NOTE

Loan Number [redacted]

FHA CASE NO. [redacted]

SEPTEMBER 25, 2001
[Date]

1666 WOODLAWN ROAD, CHATSWORTH, GEORGIA 30705
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means HOMEOWNERS MORTGAGE OF AMERICA, INC., A GEORGIA CORPORATION

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of EIGHTY THREE THOUSAND TWO HUNDRED NINETY TWO AND 00/100**** Dollars (U.S.$83,292.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN AND 500/1000 percent ( 7.500 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on NOVEMBER 1, 2001 . Any principal and interest remaining on the first day of OCTOBER 1, 2031 , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 501 VILLAGE TRACE, BLD 9-A, STE 101, MARIETTA, GEORGIA 30067

or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 582.39 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge ☐ Graduated Payment Allonge

☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000*** percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

Sheenequa M Evans (Seal)
SHEENEQUA M. EVANS -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

PAY TO THE ORDER OF: WASHINGTON MUTUAL BANK, FA
WITHOUT RECOURSE

HOMEOWNERS MORTGAGE OF AMERICA, INC., A GEORGIA CORPORATION

BY: [signature]

ITS: _______________

JAY S. ROYCE, OPS SUPERVISOR

PAY TO THE ORDER OF:

WITHOUT RECOURSE
Washington Mutual Bank F.A.
[signature]
Assistant Vice President
Gail E. Wassel

| LOAN #1: [redacted] | LOAN #2: | SEQ#: | GEORGIA |
|---|---|---|---|
| MERS ID#: | | | |

# ALLONGE

This Allonge is attached to and made a part of that certain Note or Bond, or Lost Note Affidavit in lieu of that certain Note or Bond,

Dated: **9/25/01**

Made By: **SHEENEQUA M. EVANS, AN UNMARRIED WOMAN SOLE**, Mortgagors/Trustors

To: **HOMEOWNERS MORTGAGE OF AMERICA INC.**, Mortgagee/Beneficiary

In the Amount of : **$83,292.00**

Property Address : **1666 WOODLAWN RD, CHATSWORTH, GA 30705**

Pay to the order of

without recourse.

**Washington Mutual Bank, FA**

BY: ______________________

C. Fetner
Its: Authorized Representative

WHEN RECORDED MAIL TO:

HOMEOWNERS MORTGAGE OF AMERICA, INC.
501 VILLAGE TRACE, BLD 9-A, STE 101
MARIETTA, GEORGIA 30067

MURRAY COUNTY, GEORGIA
Filed 3:30 PM October 4, 2001
Recorded October 4, 2001
Deed Book 398 Page 163
Clerk Superior Court

GEORGIA INTANGIBLE TAX PAID
$ 250.50
Oct 4, 20 01
TAX COMM., MURRAY CO., GA.

McCAIN LAW FIRM
710 SOUTH THORNTON AVE.
SUITE B
DALTON, GEORGIA 30720

[Space Above This Line For Recording Data]

# SECURITY DEED

FHA CASE NO.

THIS SECURITY DEED ("Security Instrument") is given on SEPTEMBER 25, 2001. The grantor is SHEENEQUA M. EVANS, AN UNMARRIED WOMAN SOLE

("Borrower"). The Security Instrument is given to HOMEOWNERS MORTGAGE OF AMERICA, INC., A GEORGIA CORPORATION which is organized and existing under the laws of GEORGIA, and whose address is 501 VILLAGE TRACE, BLD 9-A, STE 101, MARIETTA, GEORGIA 30067 ("Lender"). Borrower owes Lender the principal sum of EIGHTY THREE THOUSAND TWO HUNDRED NINETY TWO AND 00/100********** Dollars (U.S. $ 83,292.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on OCTOBER 1, 2031. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in MURRAY County, Georgia:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: M 44 A-70

which has the address of 1666 WOODLAWN ROAD, CHATSWORTH [Street] [City]
Georgia 30705 [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which

are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☒ Other [Specify] Waiver of Borrowers Rights/Closing Attorney Affidavit

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 5 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has singed and sealed this Security Instrument.

Sheenequa M Evans (Seal)
SHEENEQUA M. EVANS Borrower

_______________ (Seal) Borrower

_______________ (Seal) Borrower

_______________ (Seal) Borrower

_______________ (Seal) Borrower

_______________ (Seal) Borrower

Signed, sealed and delivered in the presence of:

Witness: [signature]

Witness: _______________

[signature]
Notary Public, County

OFFICIAL SEAL
ERIC SKATES
NOTARY PUBLIC - GEORGIA
WHITFIELD COUNTY
My Comm. Expires May 26, 2022

**ACKNOWLEDGEMENT AND WAIVER OF BORROWER'S RIGHTS**

Loan No.: [redacted]

Date: SEPTEMBER 25, 2001

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES. THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
In the presence of:

______________________ Unofficial Witness

______________________ Notary Public

OFFICIAL SEAL
ERIC SKATES
NOTARY PUBLIC - GEORGIA
WHITFIELD COUNTY
My Comm. Expires May 25, 2003

[signature] (Seal)
SHEENEQUA M. EVANS (Borrower)

______________________ (Seal) (Borrower)

______________________ (Seal) (Borrower)

______________________ (Seal) (Borrower)

______________________ (Seal) (Borrower)

______________________ (Seal) (Borrower)

**CLOSING ATTORNEY'S AFFIDAVIT**

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgement and Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of GEORGIA and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgement and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me
on the date set forth above.

______________________ Notary Public

OFFICIAL SEAL
ERIC SKATES
NOTARY PUBLIC - GEORGIA
WHITFIELD COUNTY
My Comm. Expires May 25, 2003

______________________ Closing Attorney

AWBR.LSR

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

**All that tract or parcel of land lying and being in Land Lot 299 of the 10th District and 3rd Section of Murray County, Georgia, being part of Tract A , as shown on a plat of survey there of prepared by Donald O. Babb, Registered Land Surveyor, dated September 22, 1997, and recorded in Plat Book 33, Page 97, in the Office of the Superior Court of Murray County, Georgia, being more particularly described as follows:**

**To find the True Point of Beginning commence at the common intersection of Land Lots 277, 278, 299, and 300; thence South 89 degrees 56 minutes 44 seconds West a distance of 333.49 feet; thence South 88 degrees 57 minutes 50 seconds West a distance of 349.77 feet; thence South 00 degrees 40 minutes 50 seconds East a distance of 994.63 feet to the True Point of Beginning; thence North 87 degrees 45 minutes 56 seconds East a distance of 170.02 feet; thence South 01 degrees 57 minutes 25 seconds East a distance of 235 +/- feet to the north right of way of Woodlawn Road (a sixty foot right of way); thence South 87 degrees 24 minutes 01 seconds West a distance of 47.10 feet; thence South 87 degrees 04 minutes 44 seconds West a distance of 128.12 feet; thence North 00 degrees 40 minutes 50 seconds West a distance of 235.25 feet to the True Point of Beginning.**

170

MURRAY COUNTY GEORGIA
Filed 3:38 pm October 4 2001
Recorded October 4, 2001
Deed Book 398 Page 170
[signature]
Clerk Superior Court

rd McCain

[Space Above This Line For Recording Data]

WHEN RECORDED MAIL TO:
HOMEOWNERS MORTGAGE OF AMERICA, INC.
501 VILLAGE TRACE, BLD 9-A, STE 101
MARIETTA, GEORGIA 30067

ATTN:

Servicing Number:

# ASSIGNMENT OF SECURITY DEED

FOR VALUED RECEIVED, HOMEOWNERS MORTGAGE OF AMERICA, INC., A GEORGIA CORPORATION ("Assignor"), has this day transferred, sold and assigned, conveyed and set over, and by these presents does transfer, sell, assign and convey unto:

WASHINGTON MUTUAL BANK, FA
333 BUTTERFIELD ROAD STE.400 LOMBARD, IL 60148 ("Assignee"),

its successors, transferees and assigns, all its right, title and interest in that certain Security Deed and the real estate therein described and the debt secured thereby, executed by: SHEENEQUA M. EVANS, AN UNMARRIED WOMAN SOLE in the amount of EIGHTY THREE THOUSAND TWO HUNDRED NINETY TWO AND 00/100 ($ 83,292.00 ) DOLLARS on SEPTEMBER 25, 2001, to HOMEOWNERS MORTGAGE OF AMERICA, INC., A GEORGIA CORPORATION

The said Assignor specifically transfers, sells, conveys and assigns to the above Assignee, its successors, transferees and assigns, all the right, power, option and privileges conferred on it under and by virtue of the terms of the said Security Deed, and the Note secured thereby.

The said Security Deed has been recorded in Deed Book 398, Page 163 of the records in the Office of the Clerk of the Superior Court of MURRAY County, Georgia. SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

The Assignor herein has this day sold and endorsed to the Assignee herein, the Note secured by said Security Deed, and this transfer is made to secure the Assignee, its successors, transferees and assigns in the payment of said Note.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and corporate seal this the day of

Signed, sealed and delivered in the presence of:

[signature]
Witness ANGIE SIMON- RAGLAND

[signature]
Notary Public

My Commission Expires:

Notary Public, Fulton County, Georgia
My Commission Expires April 30, 2004

HOMEOWNERS MORTGAGE OF AMERICA, INC., A GEORGIA CORPORATION

By: [signature]
STACY WATSON SVO OPERATIONS-EXECUTIVE

By:

Corporate Seal

[Please Attach The State Specific Notary Acknowledgment Per The Notary's Commission]

ASSIGNMENT OF SECURITY DEED

See Deed Book 398 page 170 for Assignmt.

When Recorded Return To:
Nationwide Title Clearing
2100 Alt. 19 North
Palm Harbor, FL 34683

MURRAY COUNTY, GEORGIA
Filed 11:30 AM February 7 2007
Recorded February 7, 2007
Deed Book 628 Page 724
Lorine Matthews
Clerk Superior Court

**ASSIGNMENT OF MO**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 2210 ENTERPRISE DRIVE , FLORENCE, SC 29501, (ASSIGNOR),** by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **WELLS FARGO BANK, NA, WHOSE ADDRESS IS 1 HOME CAMPUS , DES MOINES, IA 50328, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**
Said mortgage/deed is executed by **SHEENEQUA M. EVANS** to **HOMEOWNERS MORTGAGE OF AMERICA, INC.** and recorded in Deed Book 398 page 163 and/or as Instr. Number in the office of the Clerk of the Superior Court of MURRAY County, Georgia.

In witness whereof, the undersigned has set his hand and seal has hereunto set their hands **THIS 31ST DAY OF JANUARY IN THE YEAR 2007**
**WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA**
(seal)

By:____________________
**MARY JO MCGOWAN, ASST. VICE PRESIDENT**

Washington Mutual Bank
Corporate Seal Has Not Been Adopted

Signed, sealed and delivered on the date above shown.

____________________ ____________________
**SUSAN STRAATMANN Witness** **CRYSTAL MOORE Witness**

**STATE OF FLORIDA COUNTY OF PINELLAS**
**On THIS 31ST DAY OF JANUARY IN THE YEAR 2007 , before me appeared MARY JO MCGOWAN , to me personally known, who, being by me duly sworn, did say that she is the ASST. VICE PRESIDENT of WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA and that the seal affixed to said instrument is the corporate seal of said corporation, and that said instrument was signed and sealed on behalf of said corporation by authority of its board of directors, and said MARY JO MCGOWAN acknowledged said instrument to be the free act and deed of said corporation**

____________________
**MARIA LEONOR GERHOLDT Notary Public**
**My commission expires: 05/26/2009**

MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission [redacted], 2009
Bonded through (800) 432-4254
Florida Notary Assn., Inc.

**Document Prepared By: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

STATE OF Minnesota
COUNTY OF Dakota

On 8-27-13, before me, Jason P. Brumm, a Notary Public in Dakota County in the State of Minnesota, personally appeared Nancy Sorensen, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Jason P. Brumm
Notary Expires: 1/31/2016

JASON P. BRUMM
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2016

(This area for notarial seal)

MURRAY COUNTY, GEORGIA
Filed 9:00 A M August 28 2013
Recorded August 28, 2013
Deed Book 794 Page 451
Clerk of Superior Court

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: DEFAULT ASSIGNMENT, WELLS FARGO BANK, N.A. MAC [redacted] PO BOX 1629 MINNEAPOLIS, MN 55440-9049

**CORRECTIVE ASSIGNMENT OF SECURITY DEED**

Murray, Georgia
"EVANS"

PREPARED BY: WELLS FARGO BANK, N.A.

Date of Assignment: August 26th, 2013
Assignor: FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, F.A., BY WELLS FARGO BANK, N.A. AS THEIR ATTORNEY-IN-FACT at 2210 ENTERPRISE DR., FLORENCE, SC 29501
Assignee: WELLS FARGO BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, AS TRUSTEE FOR REPERFORMING LOAN REMIC TRUST CERTIFICATES, SERIES 2003-R1 at C/O 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: SHEENEQUA M. EVANS, AN UNMARRIED WOMAN SOLE To: HOMEOWNERS MORTGAGE OF AMERICA, INCORPORATED
Date of Security Deed: 09/25/2001 Recorded: 10/04/2001 in Book/Reel/Liber: 398 Page/Folio: 163 in the County of Murray, State of Georgia.

Property Address: 1666 WOODLAWN ROAD, CHATSWORTH, GA 30705

This Corrective Assignment is being recorded to amend that Assignment executed 01/31/2007 and recorded 02/07/2007 as Book 628, Page 724, as that Assignment incorrectly shows the assignee to be Wells Fargo Bank NA, whereas it should show Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, as Trustee for Reperforming Loan REMIC Trust Certificates, Series 2003-R1.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $83,292.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the* terms contained in said Mortgage.

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, F.A., BY WELLS FARGO BANK, N.A. AS THEIR ATTORNEY-IN-FACT POA: 08/20/2013 in Book/Reel/Liber: 794 Page/Folio: 78
On 8-27-13

By: Nancy Sorensen
Nancy Sorensen
Vice President Loan Documentation

WITNESS
Leisa Marie Jefferson

WITNESS
Stephanie Therese Tautges

| | |
|---|---|
| Creditor: | Specialized Loan Servicing LLC |
| Debtor: | Sheenequa Mack |
| Case No.: | 19-41032 |
| Loan No.: | xxxxxx3345 |
| Our File No.: | 4128-N-6134 |
| Collateral: | 1666 Woodlawn Road, Chatsworth, Georgia 30705 |

**PAYMENTS RECEIVED**

| | |
|---|---|
| Loan Status as of: | 8/12/2020 |
| Initial Due Date: | 6/1/2019 |

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | $ - | 6/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 7/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 8/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 9/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 10/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| 10/2/2019 | $ 4,900.00 | | | $ - | $ 4,900.00 | Funds Received |
| | $ - | 11/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 12/1/2019 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 1/1/2020 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 2/1/2020 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 3/1/2020 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 4/1/2020 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 5/1/2020 | $ 463.03 | $ - | $ (463.03) | Payment Accrued |
| | $ - | 6/1/2020 | $ 468.14 | $ - | $ (468.14) | Payment Accrued |
| 6/29/2020 | $ 500.72 | | | $ - | $ 500.72 | Funds Received |
| | $ - | 7/1/2020 | $ 468.14 | $ - | $ (468.14) | Payment Accrued |
| | $ - | 8/1/2020 | $ 468.14 | $ - | $ (468.14) | Payment Accrued |
| **Total:** | **$ 5,400.72** | | **$ 6,960.78** | **$ -** | **$ (1,560.06)** | |

| Delinquent Payments | | Days Delinquent: | 103 | |
|---|---|---|---|---|
| Month Due | P&I Due | Escrow Due | Stip Due | Total Due |
| 5/1/2020 | $ 385.65 | $ 77.38 | $ - | $ 463.03 |
| 6/1/2020 | $ 385.65 | $ 82.49 | $ - | $ 468.14 |
| 7/1/2020 | $ 385.65 | $ 82.49 | $ - | $ 468.14 |
| 8/1/2020 | $ 385.65 | $ 82.49 | $ - | $ 468.14 |
| Delinquency | | | | $ 1,867.45 |
| Less Suspense | | | | $ 307.39 |
| Total Delinquency | | | | $ 1,560.06 |